January 17, 2020

**Supreme Court**

No. 2019-66-Appeal.
(PM 18-3987)

Patrick T. Conley          :

v.          :

Crown Realty, LLC, et al.          :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Patrick T. Conley        :

v.                        :

Crown Realty, LLC, et al.        :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  The defendant, Crown Realty, LLC, appeals from a decree foreclosing its right of redemption to real property in North Providence that was the subject of a tax sale in 2017.  The appeal came before the Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided.  After hearing the arguments of counsel and after thoroughly examining the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the decree of the Superior Court foreclosing Crown Realty's right of redemption.

## I

### Facts and Travel

The facts in this case leave little room for dispute.  Crown Realty was the owner of real property located at 2 Tag Drive in North Providence (the property).  The property was used as a garage at which Crown Realty stored automobiles in connection with its towing business.  On May

18, 2017, the property was sold to the plaintiff, Patrick Conley, at a tax sale that was conducted by the Town of North Providence. On June 6, 2018, Mr. Conley, citing a failure of any interested party to redeem the property, filed a petition to foreclose the right of redemption.[1] One month later, on July 6, 2018, Duane Souza, the owner of Crown Realty, received a citation sent by Mr. Conley via certified mail which explained that all concerned parties would have twenty days after receipt of the citation to respond to the petition filed by Mr. Conley. The citation also explained that should there be a failure to respond to the petition within twenty days of the receipt of the citation, the petition would "be taken as confessed[,]" and Crown Realty would "be forever barred from contesting said petition or any decree entered thereon." The parties agree that Crown Realty did not file an answer or otherwise object within the twenty-day period.

On August 3, 2018, Mr. Conley filed a motion seeking a decree *pro confesso*.[2] Then, on August 9, Mr. Souza called Mr. Conley's office to inquire into the cost of redeeming the property. In response, a paralegal at Mr. Conley's office sent an e-mail to Mr. Souza with a redemption statement indicating that $11,676.72 would be required to redeem the property, and noting: "**INTEREST GOOD UNTIL August 18, 2018**." The statement also warned that "**Suit Will Continue, and Judgment May Enter Against You, Unless Full Payment is Received**[.]" Interestingly, Mr. Souza paid $7,995 to the Town of North Providence on August 10, 2018, which had the effect of paying the unpaid taxes on the property from the year 2017, to which Mr. Conley's petition to foreclose did not relate.

---

[1] The plaintiff also named Brenco Realty, LLC and the Town of North Providence as parties to the petition; those parties are not before the Court in this appeal.

[2] *Pro confesso* means "having confessed or admitted liability, as by failing to appear when required." Black's Law Dictionary 1459 (11th ed. 2019).

Then, on August 16, perhaps realizing his predicament, Mr. Souza obtained a cashier's check for $11,676.72, the amount indicated in the redemption statement form that he had received via e-mail from Mr. Conley's office. However, Mr. Souza did not deliver the check to Mr. Conley's office until August 20, he asserts, due to a death in the family. The check, however, was not accepted when it was proffered on August 20. Thereafter, on August 28, Crown Realty filed a response to Mr. Conley's petition to foreclose, along with a memorandum objecting to Mr. Conley's motion for a decree *pro confesso*.

A justice of the Superior Court heard argument in September 2018 regarding Mr. Conley's motion and Crown Realty's objection. After allowing the parties to submit supplemental briefs, the justice issued a bench decision in November 2018, in which she determined that Crown Realty's right of redemption was barred. In that decision, she determined that this Court's decision in *Conley v. Fontaine*, 138 A.3d 756 (R.I. 2016), was largely controlling and did not favor Crown Realty's request to redeem after the twenty-day period had elapsed. She also determined that she was unable to rule on whether the e-mail containing the redemption statement sent by Mr. Conley's paralegal had created contractual rights between the parties, because the petition before her was filed pursuant to the tax-sale statute. One week later, a final decree was entered foreclosing the right of Crown Realty to redeem the property. Crown Realty timely appealed.

On appeal before this Court, Crown Realty makes two arguments.[3] It argues that this Court's holding in *Fontaine* should not apply to this case because of the redemption statement that Mr. Conley's paralegal sent to Mr. Souza. This, says Crown Realty, amounts to "a misleading

---

[3] We note that Crown Realty makes a third argument, that Mr. Conley should be estopped from his right to a decree *pro confesso* due to, in Crown Realty's words, "Conley's intentional or negligent misrepresentation." Because we find this argument to be wholly without merit, we do not address it.

representation as to when the property owner must redeem the tax title." Crown Realty also argues that, even if Mr. Conley was entitled to a decree *pro confesso*, an implied contract existed obligating Mr. Conley to convey the property back to Crown Realty.

## II

### Discussion

At the core of this appeal is this Court's decision in *Fontaine*. In that case, we explained certain aspects of chapter 9 of title 44 of the general laws related to tax sales. *Fontaine*, 138 A.3d at 760. We said in that case that, under that chapter, after the appropriate amount of time has passed since a purchaser acquired property at a tax sale, the purchaser "may file a petition in Superior Court to foreclose upon any interested party's right of redemption." *Id.* (quoting *Izzo v. Victor Realty*, 132 A.3d 680, 685 (R.I. 2016); citing § 44-9-25(a)). We further explained that, if the purchaser chooses to foreclose on the right of redemption, he must "send notice to all interested parties[.]" *Id.* (quoting *Izzo*, 132 A.3d at 685; citing § 44-9-27). Moreover, "[o]nce notice of the petition has been provided, 'any interested party may redeem the property by filing an answer to the petition along with an offer to redeem on or before the specified return day, which may be fixed no sooner than twenty days after the issuance of the notice.'" *Id.* (quoting *Johnson v. QBAR Associates*, 78 A.3d 48, 52 (R.I. 2013); citing § 44-9-29). And finally, we explained that "if an 'interested party fails to do so, a decree shall be entered which shall forever bar all rights of redemption.'" *Id.* (quoting *Izzo*, 132 A.3d at 685; citing § 44-9-30).

After spelling out the statutory framework in *Fontaine*, we evaluated whether it was proper for a justice of the Superior Court to grant a motion by a bank whose interest was being foreclosed to file an answer outside the twenty-day return period. *Fontaine*, 138 A.3d at 760. We assumed without deciding that the motion could be considered by the trial justice and concluded that,

- 4 -

because the bank did not show good cause as to why it had failed to comply with the deadline, the justice of the Superior Court should not have granted the bank's motion. *Id.* at 760-61. Moreover, we considered whether the trial justice erred in ultimately allowing the bank to redeem the property and concluded that, because the bank failed to file a timely answer, and because its motion to file a late answer should not have been granted, the bank was in default pursuant to § 44-9-29. *Id.* at 761. We held that, because § 44-9-30 "provides that, if an interested party fails to file an answer along with an offer to redeem on or before the specified return day, * * * a decree should have been entered barring the [b]ank's right of redemption." *Id.*

In this case, despite the fact that Crown Realty does not contest that it did not respond within twenty days of receiving the notification that Mr. Conley sent, and further that Crown Realty acknowledged that there was no good reason for its failure to comply with that twenty-day deadline, Crown Realty nonetheless urges us not to apply what it terms "the draconian consequences of *Conley v. Fontaine*" to its case.

**A**

**The Application of *Fontaine***

Crown Realty argues that *Fontaine* should not apply in this case because Mr. Conley, in the words of Crown Realty, "made a misleading representation as to when the property owner must redeem the tax title." Crown Realty also relies on that argument to support its claim that it should be excused from the consequences of its failure to comply with the twenty-day return period because of excusable neglect.

Whether our precedent is applicable to the facts before us is a question of law and, as such, we review it *de novo. Votolato v. Merandi*, 747 A.2d 455, 460 (R.I. 2000).

First, we reiterate that it is undisputed that Crown Realty did not respond within the twenty-day period to the notice it received from Mr. Conley on July 6, 2018. Second, Crown Realty acknowledged that there was no good reason for its failure to respond within that time period. In fact, Crown Realty's attorney stated below: "There's no question that my client did not comply with that part of the law." Rather, the "misleading representation" Crown Realty takes issue with was the redemption statement sent by a paralegal to Mr. Souza via e-mail on August 9, two weeks after the twenty-day period had expired. And third, Crown Realty's allusion to excusable neglect refers to its failure to respond to the redemption statement attached to the paralegal's e-mail by the August 18 date stated thereon, which has nothing to do with the original citation.

In light of these facts, we are satisfied that Crown Realty's request that an exception to *Fontaine* be applied in this case is misplaced. In *Fontaine*, we merely explained the relevant statutory framework and "interpret[ed] the statute literally and * * * g[a]ve the words of the statute their plain and ordinary meanings." *Fontaine*, 138 A.3d at 760 (quoting *Shine v. Moreau*, 119 A.3d 1, 9 (R.I. 2015)). While the tax-sale statute itself may be draconian, this Court merely applies the law—it does not make it. And, moreover, the tax-sale statute is as clear today as it was when we decided *Fontaine*.[4] Crown Realty had twenty days to respond to the citation it received from Mr. Conley on July 6, 2018. It failed to do so and provided no justification for this failure.[5] As we

---

[4] We observe that Mr. Conley purchased the property in May 2017, and Mr. Conley's petition to foreclose was filed in June 2018. In July 2018, various changes to the statutory framework were made by the Legislature. *See* P.L. 2018, ch. 351, § 1. Nevertheless, we do not view any of those changes as affecting the outcome of this case, and the parties did not argue that the outcome was dependent upon which version of the statute applied.

[5] Under the updated version of the law, it is unlikely that even adequate justification would suffice; G.L. 1956 § 44-9-29 now reads, in pertinent part:

stated in *Fontaine*, when an entity fails to provide adequate justification for a failure to respond by the return date, that entity is "in default under § 44-9-29 because of its failure to file an answer setting forth its right to the [p]roperty on or before the return date[.]" *Id.* at 761. Because Crown Realty was "in default under § 44-9-29[,]" it was proper for the justice of the Superior Court to enter a decree forever barring Crown Realty's right of redemption. *Id.*; *see* § 44-9-30.[6]

**B**

**The Effect of the August 9 Redemption Statement**

Crown Realty also argues that the e-mail it received from a paralegal in Mr. Conley's office on August 9, which contained a redemption statement stating "**INTEREST GOOD UNTIL August 18, 2018**" and that "**Judgment May Enter Against You, Unless Full Payment is Received**[,]" created an implied-in-fact contract between Crown Realty and Mr. Conley, obligating Mr. Conley to allow redemption of the property. Crown Realty asserts that, even though it did not tender the payment until August 20, this does not defeat its claim of an implied contract

---

"Any person claiming an interest, on or before the return day or within that further time as may on motion be allowed by the court, *providing the motion is made prior to the fixed return day*, shall, if he or she desires to redeem, file an answer setting forth his or her right in the land, and an offer to redeem upon the terms as may be fixed by the court." (Emphasis added.)

[6] It is also noteworthy that, while the justice of the Superior Court clothed her ruling in terms of the *Fontaine* case, § 44-9-28, which was not directly discussed in *Fontaine*, is the provision entitling a petitioner to a decree *pro confesso*. That section states: "After the fixed return day, to be at least twenty (20) days after the time of the actual issuance of notice, the court * * * on motion of the petitioner shall enter an order defaulting all persons failing to file a timely answer, and decreeing that the petition as to them be taken as confessed[.]" Section 44-9-28. Moreover, § 44-9-30, in addition to directing the Superior Court to enter a decree forever barring the right of redemption when "redemption is not made within the time and upon the terms fixed by the court under § 44-9-29," also states that the court shall enter a decree forever barring the right of redemption "[i]f a default is entered under § 44-9-28[.]"

because August 18 was a Saturday and Mr. Souza made the payment on the next business day. Crown Realty also argues that its failure to comply with the deadline should not defeat its claim because the redemption statement, in Crown Realty's words, "allowed Crown to make the payment until judgment was entered." Moreover, Crown Realty argues that the delay should be forgiven because there was no indication that time was of the essence, and because performance within two days was reasonable. For his part, Mr. Conley argues that the Superior Court did not have jurisdiction to hear the contract claim and that, even if it did, the redemption statement did not create contractual rights.

Generally, when we pass on whether an implied contract existed between parties in a non-jury case, we evaluate whether "the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Cote v. Aiello*, 148 A.3d 537, 544 (R.I. 2016) (quoting *Lamarque v. Centreville Savings Bank*, 22 A.3d 1136, 1139-40 (R.I. 2011)). Nevertheless, in this case, the trial justice below did not make extensive findings of fact because she determined that she was without jurisdiction to rule on the question. The only finding she made related to the question was that "someone on [Mr. Conley's] behalf[] had extended an offer to representatives of Crown Realty" beyond the original twenty day deadline and that offer "indicated that they would be willing to accept payment of [the] redemption figure, and that representatives of Crown Realty replied [*sic*] upon that; that they went out and got the check[.]"

Despite the dearth of factual findings on the particular issue, we are of the opinion that we have all the information we need to pass on this issue. That is so because we decline Crown Realty's invitation to graft contract principles onto the strict and complex statutory framework governing tax sales and foreclosures, and we are not inclined to declare that the issuance of a redemption statement is an offer to allow a late redemption. Additionally, even if the redemption

statement constituted an offer, there existed no indication of mutual agreement. *See Cote*, 148 A.3d at 545 (explaining that mutual agreement must be found in order for an implied-in-fact contract to exist). This is demonstrated not only by Crown Realty's payment to the Town of North Providence on August 10, one day after Mr. Conley's office sent Mr. Souza the redemption statement, *see Bailey v. West*, 105 R.I. 61, 65, 249 A.2d 414, 416-17 (1969) (determining that there was no mutual agreement because, in part, the party asserting contract sent relevant bills to a third party), but also by Crown Realty's failure to tender the check of $11,676.72 to Mr. Conley's office until two days after the date listed on the redemption statement. In any event, we need say no more on the matter. No implied-in-fact contract existed between the parties.

### III

### Conclusion

For the aforementioned reasons, the decree of the Superior Court foreclosing Crown Realty's right of redemption is affirmed. The papers in this case are remanded to the Superior Court.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Patrick Conley, Esquire v. Crown Realty, LLC, Brenco Realty, LLC, Town of North Providence |
| **Case Number** | No. 2019-66-Appeal. (PM 2018-3987) |
| **Date Opinion Filed** | January 17, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Patrick T. Conley, Esq.<br>For Defendants:<br><br>Andrew M. Cagen, Esq. |